UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JACOB SAHLHOFF, )
)
*Plaintiff*, )
)
vs. ) Cause No. 3:14-cv-1790 RLM-MGG
)
GURLEY-LEEP AUTOMOTIVE )
MANAGEMENT CORP, et al., )
)
*Defendants.* )

OPINION AND ORDER

Jacob Sahlhoff claims that the defendants, collectively called "Gurley-Leep" in this opinion, interfered with his right to unpaid medical leave and retaliated against him for asserting that right under the Family Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* The court dismissed Mr. Sahlhoff's first amended complaint for failure to state a claim. He then filed a second amended complaint. Gurley-Leep moved to dismiss again, arguing that the changes to Mr. Sahlhoff's complaint don't rectify the problems of the previous one. The court disagrees.

I. BACKGROUND

Mr. Sahlhoff worked for seven years as a car salesman at Gurley-Leep.[1] He alleges that, starting in March of 2012, he started to experience sharp pain in and around his eye, the sensation of needles probing and scratching his eye, and blurred vision. The pain was so intense he often had to rest his head on his desk

---

[1] Defendant Gurley-Leep Automotive Management Corp. reserves its argument that it wasn't Mr. Sahlhoff's employer.

at work, and otherwise struggled through it to do his job. While Mr. Sahlhoff used to work at least fifty hours per week, he had to tell his supervisors that he couldn't do the overtime. Mr. Sahlhoff alleges that Gurley-Leep wasn't at all understanding. When he explained his symptoms to managers, or when they saw him in pain, they mocked or belittled him, telling him to toughen up or that he knows he can't be missing work. They did this even when he needed to leave work for medical examinations, and so Mr. Sahlhoff felt pressured to delay examinations and to return to work immediately after them. Mr. Sahlhoff went to at least three doctors between May and July. On July 6 Gurley-Leep fired him, saying that he "was not committed to the job." After termination, Mr. Sahlhoff went to numerous doctors and was ultimately diagnosed with a tumor that required removal of his right eye.

Some of the changes to Mr. Sahlhoff's complaint are significant. Mr. Sahlhoff explains that he complained about his symptoms to the general manager and sales manager. He describes with greater specificity that he sought treatment at a medical center specializing in eye problems and that he was referred to an orbital specialist for testing and treatment. He explains that each of the three or more examinations he went to between May and July of 2012 required him to miss work for about two and a half hours. He explains that the cancerous lump growing near his eye was visible to others while he was still employed at Gurley-Leep. He also describes the numerous medical appointments he made after being fired that resulted in his diagnosis and loss of his right eye.

2

## II. Standard of Review

Gurley-Leep moves to dismiss the second amended complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint need only contain a short and plain statement showing that the plaintiff is entitled to relief. *See* EEOC v. Concentra Health Servs., Inc., 496 F.3d 773, 776 (7th Cir. 2007). In deciding a Rule 12(b)(6) motion, the court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party. *See* Hecker v. Deere & Co., 556 F.3d 575, 580 (7th Cir. 2009). A complaint survives a motion to dismiss under Rule 12(b)(6) if it contains sufficient factual allegations to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Adams v. City of Indianapolis, 742 F.3d 720, 728 (7th Cir. 2014).

## III. Discussion

Mr. Sahlhoff alleges that Gurley-Leep interfered with his FMLA rights when it objected to him taking time for medical services and fired him when he was likely to require leave, and that it fired him in retaliation for asserting his rights.

### A. FMLA Interference Claim

To prevail on a claim of interference with his FMLA rights, Mr. Sahlhoff must show that (a) he was eligible for FMLA protections, (b) his employer was

covered by the FMLA, (c) he was entitled to leave under the FMLA, (d) he provided sufficient notice of his intent to take FMLA leave, and (e) his employer denied him FMLA benefits to which he was entitled. Scruggs v. Carrier Corp., 688 F.3d 821, 825 (7th Cir. 2012). Elements (c) and (d) are at issue here.

To be entitled to FMLA leave, the employee must suffer from a serious health condition that leaves him unable to perform the functions of his job. 29 U.S.C. § 2612(a)(1)(D); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 669 (7th Cir. 2011). A "serious health condition" must involve "inpatient care . . . or continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

Regulations elaborate that "continuing treatment by a health care provider" requires at least one of numerous listed conditions. 29 U.S.C. § 825.115. The first of these is "a period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition." 29 C.F.R. § 825.115(a). Mr. Sahlhoff doesn't allege that he was ever incapacitated for more than three consecutive, full calendar days, so this route is closed.

The next possible route for "continuing treatment" is "chronic conditions." § 825.115(c). A chronic serious health condition requires, first, visiting a health care provider for treatment at least twice a year. § 825.115(c)(1). "Treatment" "includes . . . examinations to determine if a serious health condition exists and evaluations of the condition." § 825.113(c). Even before Mr. Sahlhoff's termination and diagnosis, he alleges at least three examinations for these precise purposes. Second, the condition must "[c]ontinue[ ] over an extended

4

period of time (including recurring episodes of a single underlying condition); and[, third,] may cause episodic rather than a continuing period of incapacity." § 825.115(c)(2)-(3). Mr. Sahlhoff's symptoms, the sharp pains in his eye and blurring vision, began in March and continued for the roughly four months until he was terminated. Approximately four months is enough for an "extended period." *See* Burnett v. LFW, Inc., 472 F.3d 471, 478 (7th Cir. 2006) (holding that plaintiff had a chronic condition that continued for four months). Thus, Mr. Sahlhoff alleged "continuing treatment by a healthcare provider" and, thus, a "serious health condition." Similar analysis qualifies him under § 825.115(e).[2]

Despite Gurley-Leep's argument to the contrary, there's no requirement that a "serious health condition" be diagnosed by the time the employee is terminated. *See* id. (holding that the employee's prostate cancer was a serious health condition even though his diagnosis followed termination). It's enough that Mr. Sahlhoff had the serious health condition while employed, even if its cause was then unknown.

Next, to be entitled to FMLA leave, the condition had to leave Mr. Sahlhoff unable to perform the functions of his job. 29 U.S.C. § 2612(a)(1)(D). "An employee who must be absent from work to receive medical treatment for a serious health condition is considered to be unable to perform the essential functions of the position during the absence for treatment." 29 C.F.R. §

---

[2] Gurley-Leep insists incorrectly that subsection (a) of 29 C.F.R. § 825.115 is the only possible route for one to have a "serious health condition involving continuing treatment by a health care provider." Mr Sahlhoff doesn't meet the requirements of subsection (a), but each of subsections (b) through (e) provides an independent basis for a "serious health condition."

5

825.123(a). Despite Gurley-Leep's argument to the contrary, this definition doesn't require that "the health care provider finds that the employee is unable to work at all or is unable to perform any one of the essential functions of the employee's position within the meaning of the Americans with Disabilities Act." *Id.*; *see* Pagel v. TIN Inc., 695 F.3d 622, 628 (7th Cir. 2012) (holding that employee met requirement of § 825.123(a) even though there was no health care provider finding that he was unable to work). Such a finding from the health care provider may be sufficient to satisfy § 825.123(a) but isn't necessary.

Mr. Sahlhoff was unable to perform the functions of his job. First, Mr. Sahlhoff explains that he had to miss two and a half hours of work for each of his medical appointments. This absence is sufficient under the regulation, keeping in mind that "treatment" includes "examinations to determine if a serious health condition exists." 29 C.F.R. § 825.113(c).

Gurley-Leep argues that because Mr. Sahlhoff put in full time hours he could still perform. The allegations, when drawing all reasonable inferences from them, suggest otherwise. Mr. Sahlhoff was in intense pain while at work. Even though he might have been at Gurley-Leep for forty hours per week, he often had his head down on a desk. He was in such discomfort that he felt the need to regularly tell managers about his pain, and to do so despite their mockery. Indeed, that Gurley-Leep fired Mr. Sahlhoff supports the fact that he wasn't able to perform as expected. Mr. Sahlhoff plausibly alleges that he had a serious health condition, was unable to perform and, thus, was entitled to leave. 29 U.S.C. § 2612(a).

The next disputed element of the interference claim is whether Mr. Sahlhoff provided sufficient notice to Gurley-Leep of his intent to take FMLA leave. "The employee's notice obligation is satisfied so long as he provides information sufficient to show that he *likely* has an FMLA-qualifying condition." Burnett, 472 F.3d at 479. It isn't enough for an employee simply to say that he's sick. *Id.* In certain situations, though, an employee doesn't even have to tell the employer of his need for medical care. *Id.* An employee's uncharacteristic conduct at work can provide adequate notice. *Id.* (discussing Byrne v. Avon Prods., Inc., 328 F.3d 379, 381-382 (7th Cir. 2003), where an employer was on notice because the employee started to sleep on the job after an otherwise strong four-year work history). An employee also doesn't have to give notice where the health condition prevents him from communicating the nature of his illness, such as in clinical depression. *Id.*

Mr. Sahlhoff's alleged condition is unlikely to trigger nonverbal notice. The fact that he continued to work through the pain doesn't likely create the "dramatic, observable change in his work performance or physical condition" to satisfy the requirements of Burnett and Byrne. *Id.* at 480. Mr. Sahlhoff does allege, however, that he put Gurley-Leep on general notice.

Gurley-Leep argues that, "at most, Plaintiff complained of being sick." The amended complaint alleges otherwise. As in Burnett, Mr. Sahlhoff "gave an account of symptoms and complaints, which formed a coherent pattern and progression, beginning with initial symptoms, continuing with doctor's visits, and then additional testing and results – all communicated" to his manager. *Id.*

7

Mr. Sahlhoff complained about each of his symptoms to his managers. Sharp eye pain and blurring vision aren't regular symptoms of the common cold or a flu. In addition to the verbal cues, managers saw him laying his head down on a desk in a job that isn't a sedentary one, selling cars. These symptoms didn't persist for just a couple of days, but for four months, and he told managers about them throughout that time. He also repeatedly told managers about his need to leave work in order to seek medical care. And, as Mr. Sahlhoff now alleges, a growth became apparent on his right eye. Mr. Sahlhoff plausibly alleges that Gurley-Leep knew something was wrong after four months of verbal complaints to managers and behavioral change of an employee who had otherwise been satisfactory for seven years.

"The notice requirements of the FMLA are not onerous." *Id.* at 478. An employee "doesn't have to write a brief demonstrating a legal entitlement. He just has to give the employer enough information to establish probable cause, as it were, to believe that he is entitled to FMLA leave." Aubuchon v. Knauf Fiberglass, GmbH, 359 F.3d 950, 953 (7th Cir. 2004). Mr. Sahlhoff provided "probable cause" that he was so entitled here. *Id.* As a result, the interference claim stands.

### B. FMLA Retaliation Claim

An FMLA retaliation claim can be proven either directly or indirectly. Mr. Sahlhoff's response to Gurley–Leep's motion points the court to the direct method. To prevail on an FMLA retaliation claim under the direct method, an employee must show that (a) he engaged in a protected activity, (b) the employer

took an adverse employment action — such as denying leave or termination — against him, and (c) there's a causal connection between (a) and (b). <u>Langenbach v. Wal-Mart Stores, Inc.</u>, 761 F.3d 792, 799 (7th Cir. 2014); <u>Cracco v. Vitran Express, Inc.</u>, 559 F.3d 625, 663 (7th Cir. 2010). The protected activity here is Mr. Sahlhoff taking time off for his treatments. The adverse employment action is Mr. Sahlhoff's eventual termination.

Last, there's a plausible causal connection between the protected activity and the adverse employment action. Mr. Sahlhoff can demonstrate causation "either with a direct admission from [the employer] or a convincing mosaic of circumstantial evidence." <u>Langenbach v. Wal-Mart</u>, 761 F.3d at 800 (internal quotations omitted). "This mosaic can include suspicious timing, ambiguous statements from which retaliatory intent can be inferred, evidence of similar employees being treated differently, or evidence that the employer offered a pretextual reason for the termination." *Id.*

The timing of the termination is enough to raise a plausible retaliation claim. Mr. Sahlhoff had been employed by Gurley-Leep for seven years before he was fired. The termination soon after he was overcome with his illness and missed work for at least three medical appointments creates an inference that the termination is connected to the protected activity. Mr. Sahlhoff's second amended complaint explains that these visits were time-consuming, aiding the inference that Gurley-Leep would act to inhibit them. Little inference is needed that Gurley-Reep managers who would happily berate a man who is in pain or

needs medical attention would fire him for the same reasons. Mr. Sahlhoff thus alleges a plausible FMLA retaliation claim.

The differences between the first and second amended complaints aren't enormous, but the allegations that Mr. Sahlhoff allegedly complained to managers and that his cancer manifested itself visibly improves the claim that Gurley-Leep knew of the serious health condition, even if it didn't know the formal diagnosis. The length of Mr. Sahlhoff's medical appointments supports the inference that Gurley-Leep disapproved of his absence. This is enough to get Mr. Sahlhoff over the plausibility threshold to survive the motion to dismiss.

### III. CONCLUSION

For the reasons stated above, the court DENIES Gurley-Leep's motion to dismiss [Doc. No. 31].

SO ORDERED.

ENTERED:   September 29, 2016

>  /s/ Robert L. Miller, Jr.
>  Judge
>  United States District Court